## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**DAVID OTERO**,

        Plaintiff,

vs.                         No.   **CIV 06-1035 MCA/RHS**

**HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY**,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the following motions:  (1) Defendant *Hartford's Motion to Dismiss in Part Pursuant to Fed. R. Civ. P. 12(b)(6)* [Doc. 2] filed on November 2, 2006; (2) Defendant *Hartford's Motion for Summary Judgment* [Doc. 12] filed on February 2, 2007; (3) Plaintiff's *Motion to Amend and to Join* [Doc. 27] filed on June 15, 2007; (4) *Plaintiff's Objections to Magistrate's Order Denying Plaintiff's Motion for Enlargement of Discovery and Other Deadlines* [Doc. 58] filed on August 10, 2007; (5) *Plaintiff's Objections to Order Granting Hartford's Motion for Protective Order Regarding the Discovery Sought by Plaintiff* [Doc. 59] filed on August 10, 2007; and (6) Defendant Hartford's *Unopposed Motion for Leave to Respond to Plaintiff's Objections to Magistrate's Orders* [Doc. 60] filed on August 17, 2007.  Having considered the parties' submissions, the applicable law, and otherwise being fully advised in the premises, the Court determines that Plaintiff's claim for recovery of disability benefits against Defendant Hartford under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B), must be

dismissed without prejudice for failure to exhaust administrative remedies.  The Court grants Plaintiff leave to amend his complaint within 30 days to assert certain claims against National Distributing Company, Inc. (hereinafter "National") and the Group Long Term Disability Plan for Employees of National Distributing Company, Inc. (hereinafter "the Plan"); however, Plaintiff may not amend his pleading at this juncture to assert further ERISA claims against Defendant Hartford because such claims would be futile and premature in light of Plaintiff's failure to exhaust administrative remedies.  In light of these rulings, Defendant Hartford's *Motion to Dismiss* [Doc. 2] and *Motion for Summary Judgment* [Doc. 12] are granted, while Plaintiff's *Motion to Amend and to Join* [Doc. 27] is granted in part and denied in part as explained in further detail below.  Plaintiff's *Objections* [Doc. 58, 59] are overruled, and the Magistrate Judge's rulings [Doc. 56, 57] are affirmed with the exception that the existing case management deadlines will be vacated to accommodate the joinder of Defendant National.

## I.  __BACKGROUND__

Plaintiff David Otero initiated this civil action by filing a complaint against Defendant National in the Second Judicial District Court for the County of Bernalillo, State of New Mexico, on October 19, 2005.  Plaintiff's original complaint asserted an ERISA claim against Defendant National, as well as state-law claims for breach of contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, and *prima facie* tort.  All of these claims arise from Plaintiff's allegations that he was denied coverage and benefits under a long-term disability insurance plan while employed by Defendant National.

After several months of motions practice in state court, the Honorable Linda M. Vanzi, Second Judicial District Judge, entered an order on July 25, 2006, finding as follows:

1.     Plaintiff's state law claims are preempted by the Employee Retirement Income Security Act of 1974 (ERISA);

2.     Plaintiff's ERISA claim against Defendant fails to state a claim against National Distributing Company because said Defendant is not the proper party to be held liable for payments under the long-term disability plan at issue in this matter;

3.     Plaintiff should be granted leave to amend the Complaint to add Hartford Insurance as a party defendant[; and]

4.     Upon any amendment of this Complaint to add the insurer of the long-term disability plan, Hartford Insurance, as a party to this matter, Defendant [National] shall be dismissed with prejudice from this action.

[Doc. 3.] Pursuant to these findings, the Second Judicial District Court dismissed Plaintiff's entire complaint against Defendant National with prejudice, and Plaintiff filed his *First Amended Complaint for Violation of the Employee Retirement Income Security Act* against Defendant Hartford on September 19, 2006.

On October 24, 2006, Defendant Hartford removed this action to the United States District Court for the District of New Mexico, asserting federal-question jurisdiction under 28 U.S.C. § 1331 with respect to Plaintiff's ERISA claim and supplemental jurisdiction under 28 U.S.C. § 1367 with respect to Plaintiff's demand for state-law remedies.  [Doc. 1.] The parties then filed the motions which are the subject of this *Memorandum Opinion and Order*.  [Doc. 2, 12, 25, 27, 39.]

The facts asserted in the parties' motion papers with respect to Plaintiff's ERISA

claim for recovery of disability benefits from Defendant Hartford can be summarized as follows. Plaintiff began working for Defendant National in March 1999. On or about November 25, 2003, while he was still employed by Defendant National, Plaintiff completed a "2004 Enrollment Form" in which he selected coverage under the National Distributing Company, Inc. Long-Term Disability Plan (hereinafter "the Plan"). Plaintiff alleges that Defendant National began deducting premiums for this coverage from his paycheck after he completed the enrollment form. [Doc. 3; Doc. 19.]

On December 12, 2003, Plaintiff began a leave of absence from work pursuant to the Family Medical Leave Act (FMLA). The stated reason for this leave of absence was that Plaintiff's treating physician had declared him disabled due to hypertension, nephritic syndrome, and renal failure a few days earlier on December 9, 2003. Plaintiff's Family Medical Leave was exhausted on or about March 3, 2004, and he never returned to work at Defendant National. [Doc. 3; Doc. 19.]

On or about March 25, 2004, Plaintiff communicated to Defendant National a demand for long-term disability benefits under the Plan. Plaintiff's demand was based in part on a letter dated February 3, 2004, from the HR Director of Defendant National's Albuquerque Branch, Valerie Juarez, which stated that as of March 5, 2004, Plaintiff "will become eligible for Long Term Disability Insurance Pay at 60% of his previous average gross annual income of $40,000." [Doc. 19.]

Ms. Juarez's letter is contradicted, however, by a letter dated June 17, 2004, from Defendant National's Vice President, Timothy C. Kager, which concluded that Plaintiff is

4

not eligible for coverage under the terms of the Plan because he did not meet the Plan's eligibility requirements.  [Doc. 3; Doc. 34.]  The stated rationale for this conclusion rests on the "Deferred Effective Date" section of the Plan, which states that:

> If you are absent from work due to:
> 1. accidental bodily injury;
> 2. sickness;
> 3. pregnancy;
> 4. Mental Illness; or
> 5. Substance Abuse,
> on the date your insurance or increase in coverage would otherwise have become effective, your effective date will be deferred.  Your insurance, or increase in coverage will not become effective until you are Actively at Work for one full day.

[Plan at 5.[1]]  The "Definitions" section of the Plan defines "Actively at Work" as follows:

> You will be considered to be actively at work with your Employer on a day which is one of your Employer's scheduled work days if you are performing in the usual way, all of the regular duties of your job on a Full-time basis on that day.  You will be deemed to be actively at work on a day which is not one of your Employer's scheduled work days only if you were actively at work on the preceding scheduled work day.

[Plan at 16.]

Applying this language from the Plan to the facts of Plaintiff's case, Defendant National concluded that January 1, 2004, was the date Plaintiff's insurance "would otherwise have become effective," because that was the first day of coverage available to those who enrolled for the first time during the open enrollment period in November 2003.  But Plaintiff was "absent from work" due to sickness on the otherwise effective date of January 1, 2004,

---

[1]The Plan document cited herein is included in the record as part of the *Supplement to Notice of Removal* [Doc. 3] and again as an exhibit to Defendant Hartford's *Motion for Summary Judgment* [Doc. 13-3].

because he had already begun his Family Medical Leave on December 12, 2003, and he never returned to work for one full day thereafter.  Thus, according to Defendant National's interpretation of the "Deferred Effective Date" language quoted above, Plaintiff never became eligible for coverage under the Plan.

Plaintiff disputes Defendant National's conclusion that he is not eligible for coverage. He claims that Defendant National made oral representations that he was covered under the Plan as soon as he signed up during the November 2003 open enrollment period.  In the alternative, Plaintiff also claims that he relied on the representation in Ms. Juarez's letter of February 3, 2004, that he "will become eligible for Long Term Disability Insurance Pay at 60% of his previous average gross annual income of $40,000" on March 5, 2004.  [Doc. 19.] Relying on such representations that he was already covered, or about to be covered without further action on his part during the period of his Family Medical Leave, Plaintiff claims that he had no reason to believe that he needed to return to work for one full day in order to trigger his coverage under the Plan.

In his *First Amended Complaint*, Plaintiff redirects his allegations at Defendant Hartford, asserting that the insurance company was required to process his claim and award him benefits notwithstanding Defendant National's determination that he was not eligible for coverage.  [Doc. 3.]  Plaintiff further contends that Defendant National was acting as Defendant Hartford's agent when it made the various representations summarized above, and that Defendant Hartford is liable for these representations under an agency theory. [Doc. 16.]

Defendant Hartford responds by asserting that it never had occasion to consider the

merits of Plaintiff's claim for disability benefits because Defendant National had already made its determination that Plaintiff was not eligible for coverage in the first place before Defendant Hartford ever received notice of a claim or became involved in this litigation. According to Defendant Hartford, Plaintiff's position in this litigation is fundamentally mistaken because Plaintiff conflates *eligibility for coverage* with *payment of benefits* and fails to understand the Plan's division of labor between the Plan Administrator and the Insurance Company.  [Doc. 13, 20.]

Under Defendant Hartford's reading of the Plan, determining who is eligible for coverage is the responsibility of Defendant National, which is the Plan Administrator. Defendant Hartford further contends that its duty, as the Insurance Company, to make determinations regarding the payment of benefits under the Plan is not triggered until Defendant National, as the Plan Administrator, first determines that an employee is eligible for coverage, and the covered employee provides timely notice of a claim for benefits.

Insofar as Defendant Hartford never had occasion to consider the merits of Plaintiff's claim for disability benefits, and such consideration was precluded by Defendant National's earlier determination that Plaintiff is not eligible for coverage in the first place, Defendant Hartford asserts that the ERISA claim directed at Defendant Hartford must be dismissed for failure to exhaust the administrative remedies that are necessary prerequisites to judicial review under this statutory scheme.  [Doc. 13, 20.]  In response to this assertion, Plaintiff moves to amend his pleading to add additional claims against Defendant National.  [Doc. 27.]  Plaintiff also seeks to expand the scope of discovery and extend case-management

deadlines.  [Doc. 25, 39, 58, 59.]

## II.    ANALYSIS

### A.    Defendant Hartford's Motion to Dismiss in Part

Soon after this action was removed to federal court, Defendant Hartford moved to dismiss Plaintiff's claims for punitive damages and other extracontractual damages under Fed. R. Civ. P. 12(b)(6) on the grounds that the compensatory relief available under ERISA is limited to the recovery of wrongfully denied benefits and the costs and attorney fees associated with such recoveries.  [Doc. 2.]  The Supreme Court recently clarified the standard of review applicable to motions brought under Fed. R. Civ. P. 12(b)(6).  See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007).

With respect to this motion, however, it is unnecessary to delve into the details of the Supreme Court's recent clarification of Fed. R. Civ. P. 12(b)(6), because Plaintiff concedes that punitive damages and the other forms of extracontractual monetary relief for which he prays in the *First Amended Complaint* are not available in the context of an ERISA claim for recovery of disability benefits under 29 U.S.C. § 1132(a)(1)(B).  [Doc. 6.]  Accordingly, Defendant Hartford's motion to dismiss these aspects of Plaintiff's prayer for relief is granted.  As it pertains to an ERISA claim, Plaintiff will not be granted leave to reassert such a prayer in an amended pleading because such an amendment would be futile.

### B.    Defendant Hartford's Motion for Summary Judgment

Defendant Hartford has moved for summary judgment on the ERISA claim for recovery of disability benefits asserted in Plaintiff's *First Amended Complaint*.  Ordinarily,

judicial review of ERISA claims for denial of benefits is not governed by the summary-judgment standard articulated in Fed. R. Civ. P. 56, but is instead treated like an appeal from the decision of an administrative agency based on the record compiled before that agency. See, e.g., Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 517-18 (1st Cir. 2005).

In this case, however, the basis for Defendant Hartford's motion is that Plaintiff failed to exhaust his administrative remedies with respect to the Insurance Company's role as a claim administrator under the Plan, and thus there is no administrative record for the Court to review. In this specific context, Defendant Hartford's motion may be reviewed under the standard articulated in Fed. R. Civ. P. 56. See, e.g., McGraw v. Prudential Life Ins. Co., 137 F.3d 1253, 1256 (10th Cir. 1998).

Summary judgment under Fed. R. Civ. P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed. R. Civ. P. 56(e). Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Id. Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir.

9

1998).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial).  See Celotex, 477 U.S. at 324. It is not the court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment.  Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

In this case, Defendant Hartford points to the absence of any admissible evidence showing that Plaintiff ever completed a claim form and submitted it to Defendant Hartford along with proof of loss in accordance with the claim procedures set forth in the Plan.  [Plan at 14, 25.]  Thus, with respect to Defendant Hartford's role as the Insurance Company or claims administrator under the Plan, there is no question that Plaintiff has not exhausted his administrative remedies.

The Tenth Circuit has held that "[a]lthough ERISA contains no explicit exhaustion requirement, . . . 'exhaustion of administrative (i.e., company or plan-provided) remedies is an implicit prerequisite to seeking judicial relief.'"  Whitehead v. Oklahoma Gas & Elec. Co., 187 F.3d 1184, 1190 (10th Cir. 1999) (quoting Held v. Manufacturers Hanover Leasing Corp., 912 F.2d 1197, 1206 (10th Cir.1990)).  That exhaustion should be such a prerequisite

10

"derives from the exhaustion doctrine permeating all judicial review of administrative agency action . . . ."  McGraw, 137 F.3d at 1263 (citing Communications Workers of Am. v. AT & T, 40 F.3d 426, 432 (D.C.Cir.1994)).

Nevertheless, "'[b]ecause ERISA itself does not specifically require the exhaustion of remedies available under pension plans, courts have applied this requirement as a matter of judicial discretion.'"  Id., (quoting Communications Workers of Am., 40 F.3d at 432).  "In exercising that discretion, district courts have eschewed exhaustion under two limited circumstances:  first, when resort to administrative remedies would be futile; or, second, when the remedy provided is inadequate."  Id.

The burden on a party seeking to escape exhaustion on grounds of futility is a heavy one, as that party is charged with making a "clear and positive" showing of futility.  See Fizer v. Safeway Stores, Inc., 586 F.2d 182, 183 (10th Cir. 1978) (quoting Imel v. Zohn Mfg. Co., 481 F.2d 181, 184, (10th Cir. 1973)).  Moreover, "the futility exception is limited to those instances where resort to administrative remedies would be 'clearly useless . . . .'"  McGraw, 137 F.3d 1264 (quoting Communications Workers, 40 F.3d at 432).

In this case, Plaintiff's claim of futility with respect to Defendant Hartford is based on two mistaken premises:  first, that Defendant National's decision regarding Plaintiff's eligibility for coverage is attributable to Defendant Hartford under an agency theory; and second, that Plaintiff would automatically be entitled to *payment of benefits* from Defendant Hartford but for Defendant National's intervening decision regarding his *eligibility for coverage*.  Combining these premises, Plaintiff asks the Court to draw the inference that it

11

would be futile to require him to pursue further administrative remedies with respect to Defendant Hartford because Defendant Hartford is deemed to have denied his claim for exactly the same reason that was previously stated by Defendant National.

As a matter of law, I cannot accept Plaintiff's agency theory or the inferences he seeks to draw from it.  Insofar as such an agency theory is derived from state law, the Supreme Court has made clear that it is not saved from preemption under ERISA, because "deeming the policyholder-employer the agent of the insurer would have a marked effect on plan administration."  UNUM Life Ins. Co. v. Ward, 526 U.S. 358, 379 (1999); accord Deas v. Nation Sheet Metal Workers Union Nat'l Pension Fund, 114 F. Supp. 2d 1259, 1275 (S.D. Ala. 2000).

While some courts have left open the possibility of creating a federal common law of agency under ERISA, see Kobold v. Aetna U.S. Healthcare, Inc., 258 F. Supp. 2d 1317, 1323 (M.D. Fla. 2003), there are sound reasons why such creations could prove problematic and contrary to ERISA's statutory scheme and goals in the context presented here.  For example, allowing the inference that an employer acts as an agent of an insurer could draw the employer into the quagmire of dual agency, since there is contrary precedent holding that "an employer functions as its employees' agent when it negotiates insurance for the benefit of those employees."  Schurich v. Principal Fin. Group, No. Civ.A. 304CV2074, 2005 WL 1154490, at *3 (M.D. Pa. 2005) (collecting cases).

To the extent that such agency principles have any application to ERISA claims, they are generally limited to situations where the agent acts as a *messenger* rather than a *decision-*

12

*maker*.  For example, an employee may argue that an employer acts as the agent of the insurer for the purpose of delivering the employee's application to the insurer, or advising the employee of claim procedures, in order to preclude the defense that the insurer did not receive the application in a timely manner.  See, e.g., Kobold, 258 F. Supp. 2d at 1320, 1324.

In this case, however, Defendant Hartford is not claiming that it denied Plaintiff's claim for disability benefits because its agent did not receive or deliver notice of the claim on time.  Rather, Defendant Hartford asserts that it never had occasion to consider such a claim because Defendant National already had made the decision that Plaintiff was not eligible for coverage.  Plaintiff points to no admissible evidence showing that Defendant Hartford authorized or participated in Defendant National's eligibility decision, or that Defendant Hartford made any representation to Plaintiff that Defendant National was authorized to act on Defendant Hartford's behalf in making substantive decisions of this kind.  See Deas, 114 F. Supp. 2d at 1275 n.18 ("The doctrine of apparent authority is based upon the actions of the principal, not those of the agent.").

The only reasonable inference that can be drawn from the plain language and structure of the Plan itself, as well as Mr. Kager's letter of June 17, 2004, is that Defendant National was not acting as Defendant Hartford's agent in deciding that Plaintiff never became eligible for coverage.  The Plan contemplates a division of labor between Defendant National, as the "Plan Administrator," and Defendant Hartford, as the "Insurance Company" charged with making the decision on an employee's claim for benefits after the employee has completed and submitted a claim form and the requisite proof under the Plan's claim procedures.  [Plan

at 22, 25.]  Mr. Kager's letter of June 17, 2004, further explains that Defendant National, "in its capacity as the Plan Administrator, must determine whether [Plaintiff] was or is eligible to participate in the Plan."  [Doc. 34.]

Moreover, even if Plaintiff succeeded in showing that he is *eligible for coverage* under the Plan, it does not necessarily follow that he would be entitled to *payment of benefits* without first invoking and diligently pursuing further administrative relief under the claim procedures set forth in the Plan.  Under these claim procedures, there are a number of other prerequisites to obtaining an award of benefits besides mere eligibility for coverage under the Plan.

Once a claim from a covered employee is submitted to Defendant Hartford, for example, that employee is required to provide "Proof of Loss,"  which the Plan defines to include medical records as well as authorization for the release of such records.  [Plan at 14.] As Plaintiff claims that he became disabled within a month of the date he applied for coverage, any claim for benefits also may have to overcome the Plan's limitations on pre-existing conditions.  [Plan at 11.]  Finally, there is the issue of whether a claim for benefits could be reduced or offset by the Plan's provisions regarding "other income."  [Plan at 7-8, 18-19.]

Given that Defendant Hartford never had a fair opportunity to consider the issues listed above or to compile an administrative record that is sufficient for judicial review, I cannot say that it would be futile for Plaintiff to exhaust the administrative procedures set forth in the Plan before litigating his ERISA claim for recovery of disability benefits in court.

14

As further explained in the analysis of Plaintiff's *Motion to Amend and to Join*, ERISA may provide another avenue for overturning a plan administrator's decision regarding eligibility for coverage and thereby triggering an insurance company's administrative procedures for processing a claim.  And if Plaintiff succeeds in triggering these procedures at a later date, there is nothing to indicate that it would be futile for him to exhaust such procedures before returning to court.  For these reasons, Defendant Hartford's *Motion for Summary Judgment* [Doc. 12] is granted, and Plaintiff's ERISA claim for recovery of disability benefits under 29 U.S.C. § 1132(a)(1)(B)  is dismissed without prejudice.

### C.      Plaintiff's Motion to Amend and to Join

In his *Motion to Amend and Join*, Plaintiff proposes to file a *Second Amended Complaint* that asserts ERISA claims against Defendant National, Defendant Hartford and the Plan itself, expands these ERISA claims to include equitable relief for breach of fiduciary duty as well as recovery of disability benefits, and asserts a new claim against Defendant National under FMLA.  [Doc. 27-2.]  Under Fed. R. Civ. P. 15(a), leave to amend a complaint "shall be freely given when justice so requires."  Id.  It is within the Court's discretion, however, to deny leave to amend a pleading under Fed. R. Civ. P. 15(a) based upon a justifying reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  Foman v. Davis, 371 U.S. 178, 182 (1962); accord Hom v. Squire, 81 F.3d 969, 973 (10th Cir. 1996).

A motion to amend a complaint is futile if, notwithstanding the amendment, the complaint "would be subject to dismissal." Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc., 175 F.3d 848, 859 (10th Cir. 1999). An amended complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(6) if it does not "possess enough heft to sho[w] that the pleader is entitled to relief." Twombly, 127 S. Ct. at 1966 (internal quotation marks omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (citation and footnote omitted).

In articulating this standard, Twombly abrogated the Supreme Court's earlier pronouncement in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 127 S. Ct. at 1968. This language from the Conley opinion is problematic because, when read literally and in isolation, it could suggest that "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Twombly, 127 S. Ct. at 1968.

16

The "practical significance" of such a literal reading of <u>Conley</u> is that it may force defendants to go through the burden and expense of conducting discovery before they are afforded their first real opportunity to seek the dismissal of groundless claims.  <u>Id.</u> at 1966 (citing <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336, 347 (2005)).  Plaintiffs, in turn, may use this additional burden and expense of conducting discovery as leverage to induce an otherwise unjustified settlement of such groundless claims.  <u>See</u> <u>id.</u> at 1966-67.

To combat such abuses, the <u>Twombly</u> opinion emphasizes that when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, "this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court."  <u>Id.</u> (quoting <u>Daves v. Hawaiian Dredging Co.</u>, 114 F. Supp. 643, 645 (D. Hawaii 1953)).  The Court's concern with disposing of groundless claims in an efficient and timely manner takes on added significance in the ERISA context, because "'[a] primary goal of ERISA was to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously.'"  <u>Sandoval v. Aetna Life & Cas. Ins. Co.</u>, 967 F.2d 377, 380 (10th Cir. 1992) (quoting <u>Perry v. Simplicity Engineering</u>, 900 F.2d 963, 967 (6th Cir. 1990)).

In this case, Defendant Hartford contends that the proposed amendments to Plaintiff's pleading are futile or otherwise unjustified for the following reasons:  (1) Plaintiff's claims against Defendant National (including the ERISA claim) were previously dismissed with prejudice while this action was in state court; (2) Plaintiff cannot assert both a claim for recovery of disability benefits and a claim for equitable relief for breach of fiduciary duty

under ERISA because such claims are mutually exclusive; and (3) the proposed amendment does nothing to cure the fact that Plaintiff has not exhausted administrative remedies or that Defendant National's eligibility determination precludes any claim against Defendant Hartford for denying payment of benefits.

I agree with Defendant Hartford that Plaintiff's attempt to reassert an ERISA claim for recovery of disability benefits under 29 U.S.C. § 1132(a)(1)(B) without first exhausting his administrative remedies would be futile at this point.  Such a claim would not become ripe for judicial review unless and until Plaintiff first succeeded in overturning Defendant National's determination that he is ineligible for coverage and then pursued the administrative claim procedures set forth in the Plan.  An ERISA claim for recovery of disability benefits under 29 U.S.C. § 1132(a)(1)(B) would be futile as to Defendant National for the additional reason that was previously indicated in the state court's order dismissing this claim with prejudice, *i.e.*, that Defendant National is not the "Insurance Company" charged with making a decision regarding the merits of Plaintiff's claim for benefits under the Plan.

Having concluded that an ERISA claim for recovery of disability benefits under 29 U.S.C. § 1132(a)(1)(B) cannot be included in the proposed *Second Amended Complaint* because it would be futile as to all existing or proposed Defendants at this time, Defendant Hartford's argument regarding the exclusivity of this remedy no longer applies.  Like some of the employees at issue in Varity Corp. v. Howe, 516 U.S. 489, 515 (1996), the unavailability of a claim for recovery of benefits under 29 U.S.C. § 1132(a)(1)(B) at this

18

juncture means that Plaintiff must instead rely on the provision for appropriate equitable relief in 29 U.S.C. § 1132(a)(3) if he is to have any remedy at all under ERISA.

Thus, I do not foreclose the possibility that Plaintiff might utilize 29 U.S.C. § 1132(a)(3) as a mechanism for obtaining *equitable relief* against the Plan itself or against Defendant National acting in its capacity as a fiduciary of the Plan. As in Varity Corp., 516 U.S. at 515, Plaintiff's prayer for equitable relief against Defendant National and the Plan could seek to overturn Defendant National's decision regarding his eligibility for coverage by means of an injunction or reformation of the contract requiring Defendant National to provide him with such coverage. Unlike a claim for recovery of disability benefits, such a claim for equitable relief directed at Plaintiff's eligibility for coverage would not necessarily entail any monetary award but would simply place Plaintiff in a position where he may trigger the Plan's claim procedures. See, e.g., Mathews v. Chevron Corp., 362 F.3d 1172, 1185-87 (9th Cir. 2004) (noting that an injunction requiring coverage under an ERISA plan did not necessarily amount to an award of benefits because the covered employee still had to fulfill other plan requirements in order to receive such an award). But cf. Coan v. Kaufman, 457 F.3d 250, 262-63 (2nd Cir. 2006) (emphasizing that both the nature of a claim under 29 U.S.C. § 1132(a)(3) and the type of relief sought under such a claim must be equitable); Callery v. U.S. Life Ins. Co., 392 F.3d 401, 409 (10th Cir. 2004) (similar).

Evaluating the merits and timeliness of such a claim for equitable relief against Defendant National or the Plan, as well as the merits and timeliness of Plaintiff's proposed FMLA claim against Defendant National, are best left for a later date, after Defendant

19

National and the Plan are afforded notice and a fair opportunity to respond to these new claims.  See Degnan v. Publicker Industries, Inc., 83 F.3d 27, 30 (1st Cir. 1996).  The Court's decision to allow Plaintiff to plead these additional claims at this time does not preclude Defendant National or the Plan from asserting any defenses or seeking their dismissal.

With this important *caveat*, the Court grants Plaintiff's *Motion to Amend and to Join* in part with respect to asserting a claim for appropriate equitable relief against Defendant National and the Plan under 29 U.S.C. § 1132(a)(3), and asserting a FMLA claim against Defendant National.  The Court denies Plaintiff's *Motion to Amend and to Join* in part insofar as it seeks to assert an ERISA claim for recovery of benefits under 29 U.S.C. § 1132(a)(1)(B) against any Defendant or seeks anything other than appropriate equitable relief under 29 U.S.C. § 1132(a)(3) with respect to the proposed new ERISA claim against Defendant National and the Plan.  Accordingly, the Court's decision to permit an amended pleading does not alter the conclusion that Defendant Hartford must be dismissed from this action without prejudice.

### D.    Plaintiff's Objections to Magistrate Judge's Rulings

Plaintiff has filed objections to the United States Magistrate Judge's denial of his *Motion for Protective Order Regarding Discovery Sought by Plaintiff* [Doc. 25] seeking to set aside Plaintiff's notice of deposition of Defendant National's employee, Valerie Juarez, and Plaintiff's First Set of Interrogatories and Requests for Production.  Plaintiff also has filed objections to the United States Magistrate Judge's denial of his *Motion for Enlargement of Discovery and Other Deadlines* [Doc. 39.]

The rulings to which Plaintiff objects concerned nondispositive pretrial matters, and I find that these rulings are not clearly erroneous or contrary to law.  See Fed. R. Civ. P. 72(a); 28 U.S.C. 636(b)(1)(A) (1994); Comeau v. Rupp, 810 F. Supp. 1127, 1167 (D. Kan. 1992).  Both Defendant Hartford and the Magistrate Judge correctly point out that the discovery mechanisms Plaintiff seeks to invoke generally are not permitted in the context of an ERISA claim for recovery of disability benefits under 29 U.S.C. § 1132(a)(1)(B).  See DeGrado v. Jefferson Pilot Fin. Ins. Co., 451 F.3d 1161, 1169 (10th Cir. 2006).  It is unnecessary for the Court to decide whether an exception to this general rule applies in this case, because the Court already has determined that Defendant Hartford must be dismissed from this action without prejudice.  It follows that there is no basis for conducting further discovery as to Plaintiff's existing or proposed claims against Defendant Hartford. Nevertheless, it will be necessary to vacate the existing case-management deadlines and establish new deadlines in order to accommodate the joinder of new parties in Plaintiff's amended pleading.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff's ERISA claim against Defendant Hartford for recovery of disability benefits under 29 U.S.C. § 1132(a)(1)(B) must be dismissed without prejudice for failure to exhaust administrative remedies.  Plaintiff's prayer for punitive damages and other extracontractual monetary relief also must be dismissed insofar as it pertains to an ERISA claim.  As a result, Defendant Hartford is no longer a party to this action, and Plaintiff is denied leave to add new claims, conduct discovery, or extend case-

management deadlines with respect to Defendant Hartford at this time. Nevertheless, the Court will grant Plaintiff leave to file an amended pleading within 14 days that asserts a FMLA claim against Defendant National and an ERISA claim for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) against Defendant National and the Plan. With respect to such new claims asserted against Defendant National and the Plan, the existing case-management deadlines are vacated and will be reset at a later date.

**IT IS THEREFORE ORDERED** that  Defendant *Hartford's Motion to Dismiss in Part Pursuant to Fed. Civ. P. 12(b)(6)* [Doc. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant *Hartford's Motion for Summary Judgment* [Doc. 12] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's *Motion to Amend and to Join* [Doc. 27] is **GRANTED IN PART** with respect to the proposed FMLA claim against Defendant National and the proposed ERISA claim for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) against Defendant National and the Plan, provided that the amended pleading adding these new claims is filed by no later than September 10, 2007.

**IT IS FURTHER ORDERED** that Plaintiff's *Motion to Amend and to Join* [Doc. 27] is **DENIED IN PART** with respect to the proposed ERISA claim for recovery of disability benefits under 29 U.S.C. § 1132(a)(1)(B), and with respect to any additional claims against Defendant Hartford.

**IT IS FURTHER ORDERED** that *Plaintiff's Objections to Magistrate's Order Denying Plaintiff's Motion for Enlargement of Discovery and Other Deadlines* [Doc. 58] are

**OVERRULED**, and the Magistrate Judge's *Order Denying Plaintiff's Motion for Enlargement of Discovery and Other Deadlines* [Doc. 56] is **AFFIRMED**.

   **IT IS FURTHER ORDERED** that *Plaintiff's Objections to Order Granting Hartford's Motion for Protective Order Regarding the Discovery Sought by Plaintiff* [Doc. 59] are **OVERRULED**, and the Magistrate Judge's *Order Granting Hartford's Motion for Protective Order Regarding the Discovery Sought by Plaintiff* [Doc. 57] is **AFFIRMED**.

   **IT IS FURTHER ORDERED** that Defendant Hartford's *Unopposed Motion for Leave to Respond to Plaintiff's Objections to Magistrate's Orders* [Doc. 60] is **DENIED AS MOOT**.

   **IT IS FURTHER ORDERED** that Plaintiff's ERISA claim against Defendant Hartford is **DISMISSED WITHOUT PREJUDICE**, and Defendant Hartford is dismissed as a party to this action.

   **IT IS FURTHER ORDERED** that the case-management deadlines set forth in the Court's *Order* [Doc. 8] filed on December 22, 2006, and the *Initial Pretrial Report* [Doc. 15] are **VACATED** with respect to Plaintiff's proposed new claims against Defendant National.

   **SO ORDERED** this 27th day of August, 2007, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge