IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DAVID OTERO**,

       Plaintiff,

vs.                              No.   **CIV 06-1035 MCA/RHS**

**NATIONAL DISTRIBUTING
COMPANY, INC.**, and **GROUP
LONG TERM DISABILITY PLAN
FOR EMPLOYEES OF NATIONAL
DISTRIBUTING COMPANY, INC.**,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendants' Motion to Dismiss* [Doc. 66] filed on November 19, 2007, and *Defendants' First Amended Motion to Dismiss* [Doc. 68] filed on November 19, 2007.  Having considered the parties' submissions, the applicable law, and otherwise being fully advised in the premises, the Court grants in part and denies in part Defendants' amended motion to dismiss for the reasons set forth below.  Defendants' original motion to dismiss is denied as moot because it was superseded by the amended motion.

## I.  BACKGROUND

The history of this litigation is set forth in the *Memorandum Opinion and Order* [Doc. 61] filed on August 27 2007.  Since the date of that ruling, Plaintiff has filed a *Second Amended Complaint* [Doc. 62] against Defendants National Distributing Company, Inc. and

the Group Long Term Disability Plan for Employees of National Distributing Company, Inc. Plaintiff's amended pleading contains two counts:  one seeking equitable relief for the alleged breach of a fiduciary duty under the Employee Retirement Income Security Act (ERISA), and another seeking damages for alleged interference with Plaintiff's rights under the Family Medical Leave Act (FMLA).

On November 19, 2007, Defendants moved to dismiss the claims asserted in Plaintiff's *Second Amended Complaint* on the grounds that they are precluded under the Rooker-Feldman doctrine and principles of *res judicata*.  In the alternative, Defendants also move to dismiss this action on the grounds that Plaintiff fails to state a claim on which relief can be granted under FMLA or ERISA.

## II.   ANALYSIS

### A.   Standard of Review

Defendants assert that the new claims asserted in Plaintiffs' *Second Amended Complaint* are subject to dismissal on two different grounds:  failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6), and lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  Motions to dismiss for lack of subject matter jurisdiction under the latter rule "generally take one of two forms:  (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir.2002).  In reviewing a facial attack, the Court construes Plaintiff's pleading liberally, accepts all uncontroverted, well-pleaded factual allegations as true, and

views all reasonable inferences in Plaintiff's favor.  See Stuart v. Colo. Interstate Gas Co., 271 F.3d 1221, 1225 (10th Cir. 2001).  "In reviewing a  factual attack, a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts,'" and a court's reference to such materials does not necessarily convert such a factual attack into a Rule 56 motion.  Id. (quoting Holt v. United States, 46 F.3d 1000, 1003 (10th Cir.1995)).  Unless it is shown that no re-drafting of the pleadings could cure the jurisdictional defect, a dismissal for lack of subject-matter jurisdiction generally is not a decision on the merits and, therefore, constitutes a dismissal without prejudice.  See Fed. R. Civ. P. 41(b); Leaf v. Supreme Ct. of Wis., 979 F.2d 589, 595 (7th Cir. 1992).

If the Court has jurisdiction over the subject-matter of this action, Plaintiff's *Second Amended Complaint* may nevertheless be dismissed with prejudice for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  As discussed in the Court's prior *Memorandum Opinion and Order* [Doc. 61], the standard for determining whether a claim is subject to dismissal under Fed. R. Civ. P. 12(b)(6) was recently clarified in  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007).  The Court's prior discussion of this standard is incorporated herein by reference, and the Court applies the same standard to Defendants' present motion.

The standard of review articulated in Twombly still requires the Court to view the well-pleaded factual allegations in Plaintiff's *Second Amended Complaint* in the light most favorable to him and to construe all reasonable inferences in his favor.  See Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007); TON Servs., Inc. v. Qwest Corp., 493 F.3d 1225,1236

(10th Cir. 2007).  "In addition to the complaint, the . . . [C]ourt may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002).  Thus, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."  GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir.1997).  In this case, documents falling into this category include the Group Benefit Plan attached as Exhibit 2 to Defendant's memorandum in support of its amended motion [Doc. 69-3], as well as the letters attached as Exhibits 1 and 2 to Plaintiff's *Second Amended Complaint* [Doc. 62-2, 62-3].

### B.   *Res Judicata* **and the Rooker-Feldman Doctrine**

As noted in this Court's *Memorandum Opinion and Order* [Doc. 61], this action originated in the Second Judicial District Court for the County of Bernalillo, State of New Mexico.  After several months of motions practice in state court, the Honorable Linda M. Vanzi, Second Judicial District Judge, entered an order dismissing Defendant National Distributing Company, Inc. (hereinafter "National") from this action with prejudice.  The action was subsequently removed to the United States District Court for the District of New Mexico, wherein Plaintiff was granted leave to file his amended pleading asserting new claims against Defendant National and the Group Long Term Disability Plan for Employees of National Distributing Company, Inc. (hereinafter "the Plan").

Defendant National now contends that such claims are precluded by the prior ruling that Judge Vanzi entered while the action was pending in state court.  In support of this contention, Defendant National cites the Rooker-Feldman doctrine and the principles of *res judicata*.  The Rooker-Feldman doctrine sets forth one of the legal grounds which may preclude a federal district court from overturning a prior state-court judgment, but it is confined to cases in which "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment."  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005).

The doctrine of *res judicata* provides another basis for giving preclusive effect to a prior state-court judgment, but it is confined to cases where a final judgment has been rendered on the merits in a separate action.  See Valencia-Alvarez v. Gonzales, 469 F.3d 1319, 1324 (9th Cir. 2006) (citing 18 James Wm. Moore et al., Moore's Federal Practice, §§ 131.30[2]-[3], 131.31[1] (3d ed.2006)).  "Res judicata does not speak to direct attacks in the same case, but rather has application in subsequent actions."  McIlravy v. Kerr-McGee Coal Corp., 204 F.3d 1031, 1035 n.1 (10th Cir. 2000).

Neither the Rooker-Feldman doctrine nor the doctrine of *res judicata* apply here. Judge Vanzi's prior rulings did not constitute a *final* judgment in a *separate* action, and Plaintiff did not *file suit* in federal court after the state proceedings ended.  On the contrary, the claims asserted in Plaintiff's *Second Amended Complaint* are filed in the *same* action that was previously before Judge Vanzi, and that action arrived in federal court due to its *removal*

5

by a former Defendant, Hartford Life and Accident Insurance Company (hereinafter "Hartford"). Thus, "at the outset, it is important to keep in mind that this situation does not involve two separate lawsuits, one in state court and another in federal court. Rather, it involves one suit that originated in state court and that was removed to federal court." <u>Payne v. Churchich</u>, 161 F.3d 1030, 1037 (7th Cir. 1998).

In this context, the removal statute expressly provides that "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450. Courts have interpreted this statutory language to mean that, "once the case is in federal court, the state court orders issued prior to removal are not conclusive but remain binding until they are set aside." <u>Payne</u>, 161 F.3d at 1037. In other words, "[t]he 'full force and effect' provided state court orders after removal of the case to federal court was not intended to be more than the force and effect the orders would have had in state court." <u>Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70</u>, 415 U.S. 423, 436 (1974).

The preclusion doctrine that applies to a court's review or reconsideration of prior rulings entered in the same case is not *res judicata* or the Rooker-Feldman doctrine, but rather the doctrine of "law of the case." <u>Payne</u>, 161 F.3d at 1038; <u>see</u> <u>McIlravy</u>, 204 F.3d at 1035 n.1. The "law of the case" doctrine is not a jurisdictional limit on a federal court's power, <u>see</u> <u>Christianson v. Colt Indus. Operating Corp.</u>, 486 U.S. 800, 817 (1988), but rather a general maxim that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case," <u>Arizona v. California</u>, 460

U.S. 605, 618 (1983). Thus, federal courts retain the discretion to revisit prior rulings by a state court after they are removed from that forum, particularly when such prior rulings involve a question of federal law. See Quinn v. Aetna Life & Cas. Co., 616 F.2d 38, 40-41 (2d Cir. 1980); Waag v. Thomas Pontiac, Buick, GMC, Inc., 930 F. Supp. 393, 406-07 (D. Minn. 1996). And "once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal." Granny Goose Foods, Inc., 415 U.S. at 437.

In this case, I do not construe Judge Vanzi's prior ruling as expressing or implying any opinion on the viability of the new claims asserted in Plaintiff's *Second Amended Complaint*. There was no FMLA claim pending before Judge Vanzi in state court at the time she dismissed Defendant National, and the ERISA claim pending at that time was a claim for damages occasioned by a denial of long-term disability benefits, not a claim for equitable relief under Varity v. Howe, 516 U.S. 489 (1996).

For the reasons stated in the *Memorandum Opinion and Order* [Doc. 61] filed on August 27, 2007, I agree with Judge Vanzi that National is not the proper Defendant for an ERISA claim for denial of benefits. However, under federal law, the proper procedure is to dismiss that claim *without prejudice* for failure to exhaust administrative remedies, thereby allowing Plaintiff to reassert such a claim against the proper Defendant if and when the exhaustion requirement is satisfied.

Defendants have presented no argument or authority to suggest that the "law of the case" doctrine precludes Plaintiff from asserting the new claims set forth in his *Second*

*Amended Complaint* at this juncture.  Under these unique circumstances, the Court declines to apply this doctrine to the prior state-court rulings in which Defendant National was dismissed with prejudice before the action was removed to federal court.  Defendants' motion to dismiss will be denied in part insofar as it relies on principles of *res judicata* or the Rooker-Feldman doctrine as a basis for dismissing the claims asserted in Plaintiff's *Second Amended Complaint*.

### C.     <u>Plaintiff's Claim for Equitable Relief Under ERISA</u>

As an alternative grounds for dismissing Plaintiff's ERISA claim, Defendants cite the propositions that the forms of equitable relief available under Section 1132(a)(3) of ERISA cannot be used as a subterfuge to obtain what is in effect an award of damages, and that any recovery under Section 1109 of the statute must inure to the plan, not the individual beneficiary.  But these propositions do not provide grounds for dismissing the ERISA claim in Plaintiff's *Second Amended Complaint*, because Plaintiff is seeking neither a recovery under Section 1109 nor any payments under Section 1132(a)(3) from these Defendants.

Rather, what the Court's prior *Memorandum Opinion and Order* [Doc. 61] permitted Plaintiff to plead is a very narrow claim for an injunction, estoppel, or reformation of the contract that, if successful, would only allow him to invoke the insurer's procedures for processing a claim, with no guarantee that such a claim would actually result in the payment of benefits.  As explained in the Court's prior ruling, there is Supreme Court precedent allowing such a claim to be pled in this context.  See <u>Varity v. Howe</u>, 516 U.S. 489 (1996).

This type of ERISA claim is premised in part on the alleged oral or written

representations of Defendants' agents to the effect that Plaintiff was automatically covered under the Plan before commencing his FMLA leave and did not need to return to work thereafter.   As a matter of law, however, the Court recognizes that such informal communications between Plaintiff and Defendants' alleged agents could not modify the written terms of the Plan.  See Miller v. Coastal Corp., 978 F.2d 622,  624 (10th Cir. 1992); Straub v. Western Union Telegraph Co., 851 F.2d 1262, 1265  (10th Cir. 1988).  Thus, the Court does not consider the alleged informal communications between Plaintiff and Defendants' agents as an amendment or other authorized change to the Plan.

Rather, the Court interprets the plain language of the Plan to mean that the insurance coverage for which Plaintiff applied at some point during the Annual Enrollment Period between October 1,  2003, and December 1, 2003, could not become effective until the first day of the following month, *i.e.*, January 1, 2004.  [Doc. 69-3, at 7-8.]   The Plan further provides that if Plaintiff was absent on his first scheduled workday in January 2004 due to sickness, then such coverage could not become effective until the first day thereafter on which Plaintiff was actively at work for one full day.  [Doc. 69-3, at 8, 19.]  The question presented by Plaintiff's ERISA claim is not whether--as a matter of law--these requirements for determining the effective date of coverage are part of the Plan, but whether–as a matter of equity--Plaintiff should be excused from performing as required under the Plan (*i.e.*, returning to work for one full day on or after January 1, 2004), because Defendants' agents allegedly told him he did not have to do so in order to obtain coverage.

The answer to the latter question requires further briefing and evidence, not simply

an interpretation of the Plan's plain language.  At this preliminary juncture, the Court is still required to view the well-pleaded factual allegations in Plaintiff's *Second Amended Complaint* in the light most favorable to him and to construe all reasonable inferences in his favor.  See Erickson, 127 S. Ct. at 2200; TON Servs., Inc., 493 F.3d at1236.  Accordingly, the Court cannot adopt the factual scenario suggested in Defendants' motion papers, which ignores the letter of February 3, 2004, attached to Plaintiff's pleading [Ex. 1 to Doc. 62] and draws the inference that Plaintiff would *not* have taken alternative action to trigger the effective date of insurance coverage even if he had been properly and timely advised that he was not yet covered.

For these reasons, Defendants' amended motion to dismiss is denied in part as it pertains to Plaintiff's claim for purely equitable relief under ERISA.  The denial of this motion is without prejudice, and the Court expresses no opinion as to the weight or credibility of the evidence which may be used to support or defeat such an ERISA claim.

### D.    Plaintiff's FMLA Claim

Defendants also move to dismiss Plaintiff's FMLA claim on the grounds that it fails to state a claim upon which relief may be granted for two reasons.  First, Defendants contend that Plaintiff's FMLA claim is untimely because it was not asserted until more than three years after Defendant National issued the letter denying his eligibility for long-term disability coverage under the Plan.  In the alternative, Defendants assert that Plaintiff's *Second Amended Complaint* fails to state a viable FMLA claim because his long-term disability coverage did not accrue before the date on which his FMLA leave commenced.  I find it

10

unnecessary to address the timeliness of Plaintiff's FMLA claim because I conclude that even if it relates back to the date of Plaintiff's original pleading, this claim is still not viable under Fed. R. Civ. P. 12(b)(6).

Plaintiff's pleadings do not assert that his employer denied his request for FMLA leave or refused to restore his employment after granting his FMLA leave request. Rather, Plaintiff is attempting to link his FMLA leave to his eligibility for long-term disability insurance under the Plan by invoking the section of FMLA which provides that: "The taking of leave under Section 2612 of this title shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced." 29 U.S.C. § 2614(a)(2). In particular, Paragraph 31 of Plaintiff's *Second Amended Complaint* alleges that: "The denial of long-term disability benefits by Defendant National while Plaintiff was exercising his rights under the FMLA amounts to a denial of Plaintiff's employment benefits contrary to 29 U.S.C. § 2614, and therefore, amounts to [a] willful, intentional and unlawful interference with Plaintiff's exercise of his rights under the FMLA in violation of 29 U.S.C. § 2615." [Doc. 62, at 7.]

To prevail on this claim, Plaintiff must show, among other things, that long-term disability insurance under the Plan was an employment benefit that accrued prior to the date on which his FMLA leave commenced. Conversely, if the insurance coverage did not accrue before Plaintiff commenced his FMLA leave, then the denial of coverage cannot support an interference claim under FMLA, because the statute also provides that an "employee shall not be entitled to 'the accrual of any seniority or employment benefits during any period of

11

leave[,] or ... any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.'"  Sommer v. The Vanguard Group, 461 F.3d 397, 399 (3d Cir. 2006) (quoting 29 U.S.C. §§ 2614(a)(3)); accord Metzler v. Federal Home Loan Bank, 464 F.3d 1164, 1180 (10th Cir. 2006); 29 C.F.R. § 825.215(d)(2).  Thus, while taking FMLA leave cannot disqualify an employee from receiving benefits that he already accrued before taking such leave, the statute does not entitle an employee to recover more benefits than he otherwise would have been entitled to if he had not taken such leave.

In determining whether an employee would have been entitled to a particular payment (such as a bonus) had he not taken FMLA leave, courts may look to whether the accrual of the payment in question is contingent on the employee's performance of some act (such as working a certain number of hours or producing a certain amount of earnings), or is instead premised on the absence of an occurrence (such as a record of no accidents or complaints). See Sommer, 461 F.3d at 400-01; Bozeman v. Per-Se Technologies, Inc., 456 F. Supp. 2d 1282, 1349 n.152 (N.D. Ga. 2006).  If the payment in question is triggered by the employee's performance of a specific act, and such performance does not occur because the employee is on FMLA leave, then FMLA and its implementing regulations do not require the employer to make the payment nor do they excuse the employee from performing the act which would otherwise trigger his eligibility for the payment.  See Sommer, 461 F.3d at 400-01.

FMLA and its implementing regulations distinguish between "pay" and "benefits." See Chubb v. City of Omaha, Nebraska, 424 F.3d 831, 832 (8th Cir. 2005).  "Disability

insurance" is defined as an "employment benefit," not a form of "pay." See 29 U.S.C. § 2611(5); 29 C.F.R. § 825.215(d). However, the FMLA regulations and advisory opinions from the Department of Labor (DOL) regarding "pay" and "employment benefits" interpret the statute in a similar matter. They generally require continuation of an employee's insurance coverage that was already in effect before the employee took FMLA leave, see 29 C.F.R. § 825.215(d), but if the provision of future coverage is contingent on employee performance (such as working a certain number of hours in the previous calendar year), then taking FMLA leave does not excuse the employee from meeting this type of prerequisite for future coverage, see DOL Op. Ltr. FMLA 2006-4-A (Feb. 13, 2006). [Ex. 3 to Doc. 69-4.]

In this case, Plaintiff does not allege that he had already obtained long-term disability insurance effective during the 2003 calendar year and was merely seeking to renew that coverage for the following calendar year. Rather, Plaintiff claims he first applied for long-term disability insurance at some point during the Plan's Annual Enrollment Period between October 1, 2003, and December 1, 2003. He then took FMLA leave beginning later in the month of December 2003.

Under this scenario, the Plan clearly provides that the insurance coverage for which Plaintiff applied during the Annual Enrollment Period could accrue no sooner than January 1, 2004, and required that he return to work for one full day on or after that date in order to become effective. [Ex. 2 to Doc. 69-3, at 7-8, 19.] As Plaintiff was on FMLA leave on January 1, 2004, and never returned to work thereafter, the coverage for which he applied never went into effect. It follows as a matter of law that eligibility for long-term disability

13

coverage under the Plan was not among the benefits that Plaintiff accrued prior to the date on which his FMLA leave commenced.  See Chubb, 424 F.3d at 832.

Regardless of whether the Court were to follow the FMLA regulations applicable to "pay" or "benefits," Plaintiff's FMLA claim fails because the requirements for triggering long-term disability coverage under the Plan at issue here included performance of a specific act by the employee, *i.e.*, returning to work for one full day on or after January 1, 2004. Whether Plaintiff did or did not take FMLA leave had no effect on this requirement, as taking such leave did not preclude him from obtaining coverage, but only deferred the effective date of such coverage until he returned to work.  To use FMLA as a basis for requiring Defendants to provide the requested insurance coverage even though Plaintiff never returned to work would allow him to recover more benefits than he otherwise would have been entitled to if he had simply left work in December 2003 without taking FMLA leave. Thus, under the reasoning expressed in Sommer, 461 F.3d at 399, Defendants were within their rights under FMLA in denying coverage for a benefit that had not yet accrued at the time Plaintiff began his FMLA leave.

In his response brief regarding Defendants' motion to dismiss, Plaintiff's only argument in support of his FMLA claim is that, if he were to prevail on his ERISA claim for equitable relief, then the above interpretation of the Plan's effective date would not apply, and he would be excused from the requirement of returning to work for one full day in order to accrue long-term disability insurance coverage.  This hypothetical scenario, however, still does not make the Plan's requirements for accruing long-term disability insurance coverage

contingent on whether Plaintiff did or did not take FMLA leave; therefore, it cannot support an interference claim under FMLA.

Moreover, the Court will not permit Plaintiff to bootstrap a FMLA claim for damages onto an ERISA claim for equitable relief in this manner, because to do so would circumvent the limitations discussed above with respect to the scope of equitable relief that can be awarded under ERISA. For all of the above reasons, Defendants' amended motion to dismiss is granted in part with respect to Plaintiff's FMLA claim.

The dismissal of Plaintiff's FMLA claim has the effect of removing the only claim asserted in Plaintiff's pleading on which the parties have a right to trial by jury. Accordingly, the Court will vacate the jury trial scheduled on March 9, 2009. In its place, the Court will reset the bench trial on Plaintiff's ERISA claim on that same date. All other case-management deadlines and pretrial hearings remain in effect, except that the parties will be required to file trial briefs, as well as proposed findings of fact and conclusions of law, in lieu of their proposed jury instructions. The parties' proposed findings of fact and conclusions of law are due on Monday, February 9, 2009, and their trial briefs are due on Monday, March February 23, 2009.

## III.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants' amended motion to dismiss is granted in part with respect to Plaintiff's FMLA claim and denied in part with respect to Plaintiff's ERISA claim. Defendants' original motion to dismiss is denied as moot because it was superseded by Defendants' amended motion.

**IT IS THEREFORE ORDERED** that *Defendants' First Amended Motion to Dismiss* [Doc. 68] is **GRANTED IN PART** with respect to the FMLA claim in Count II of Plaintiff's *Second Amended Complaint* and **DENIED IN PART** with respect to the ERISA claim in Count I of the *Second Amended Complaint*.

**IT IS FURTHER ORDERED** that *Defendants' Motion to Dismiss* [Doc. 66] is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that the **JURY TRIAL** on the FMLA claim asserted in Count II of Plaintiff's *Second Amended Complaint* that was previously set for Monday, March 9, 2009, at 9:00 a.m. is **VACATED**, and, in its place, the **BENCH TRIAL** on the ERISA claim asserted in Count I of Plaintiff's pleading is hereby set for **MONDAY, MARCH 9, 2009, at 9:00 a.m.**, at the United States Courthouse, 333 Lomas Boulevard, NW, *Chama* Courtroom, Fourth Floor, Albuquerque, New Mexico.

**IT IS FURTHER ORDERED** that with the exception of substituting the bench trial on Plaintiff's ERISA claim for the jury trial on Plaintiff's FMLA claim as described above, all case-management deadlines and settings set forth in the *Scheduling Order* [Doc. 78] and the *Minute Order Scheduling Jury Selection/Trial* [Doc. 85] remain in effect.

**IT IS FURTHER ORDERED** that in lieu of submitting proposed jury instructions, the parties are required to submit trial briefs and proposed findings of fact and conclusions of law in accordance with the following schedule:

1.      the parties' (contemporaneously filed) proposed findings of fact and conclusions of law are due on Monday, February 9, 2009; and

2.      the parties' (contemporaneously filed) trial briefs are due on Monday, February 23,

2009.

        **SO ORDERED** this 1st day of July, 2008, in Albuquerque, New Mexico.

                                              _____
                                              **M. CHRISTINA ARMIJO**
                                              United States District Judge